**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Stephen J. Catalano**, | CASE NO.: 17-3471 |
| Plaintiffs, | |
| v. | |
| **Seterus, Inc.,** | **VERIFIED COMPLAINT** |
| Defendant. | **(Jury Demand Endorsed hereon)** |

Plaintiff, Stephen J. Catalano, by and through counsel, and based upon information and belief hereby states as follows, for his complaint against the Defendant, Seterus, Inc.:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, Stephen J. Catalano ("Plaintiff") or ("Mr. Catalano"), is the owner of residential real property, located at and commonly known as 48 Fulton Boulevard, Commack, NY 11725 (the "Property") which he has occupied as his primary principal residence at all times relevant to this complaint.

2.      Defendant, Seterus, Inc. (hereinafter "Defendant" or "Seterus") is a national loan servicing company.

3.      Plaintiff is a "consumer" as that term is defined in 15 U.S.C. §1692(a)(3) because he is a natural person who Seterus has alleged owes it a debt.

4.      Seterus, is a Delaware Corporation registered to do business in the State of New York with its principal office located at 14523 SW Millikan Way, Suite 200, Beaverton, Oregon,

97005 and its agent for service of process in New York is CT Corporation System, 111 Eighth Avenue, New York, New York 10011.

5.      Seterus is the current servicer of the Note executed by Plaintiff (the "Note") and of a Mortgage on the Property that secures said Note (the "Mortgage"). Defendant services the Note and Mortgage (collectively referred to hereinafter as the "Loan") on behalf of Federal National Mortgage Association ("Fannie Mae"), the alleged owner of Plaintiff's Loan.

6.      Seterus has been the servicer of the Loan since on or about September 1, 2014. Seterus became the servicer of the loan after the loan was in default and is thus a debt collector as that term is defined pursuant to 15 U.S.C. §1692(a)(6).

7.      Seterus, as the current servicer of the loan is subject to federal laws governing the servicing of mortgage loans.

8.      Seterus, failed in its duty to properly service Mr. Catalano's loan as set forth more fully herein-below, and since Seterus was given an opportunity to correct the servicing error and did not, Seterus intentionally and willfully committed an intentional tort, directing the tortious behavior to New York, with the situs of the injury being Commack, New York and the locale venue where the brunt of the harm was felt.

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA"), the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601, *et seq*. ("RESPA") and The Truth in Lending Act ("TILA") as contained in the Consumer Credit Protection Act as amended 15 U.S.C. §§1601, *et seq.* This action is filed to enforce regulations promulgated by the Consumer

2

Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §1024.1, *et seq.* of Regulation X and 12 U.S.C. 1026.1 *et seq.* of Regulation Z.

10.     This action also arises out of defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C 1692, et seq. ("FDCPA").

11.     This Court has supplemental jurisdiction to hear any and all state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. §1367.

12.     Venue lies in this district pursuant to 28 U.S.C. §1391(b), as plaintiff resides and the property is located in New York.

## **INTRODUCTION**

13. Plaintiff restates and incorporates all of his statements and allegations containedin the preceding paragraphs in their entirety, as if fully rewritten herein.

14. In January 2013, the Consumer Financial Protection Bureau (hereinafter "CFPB") issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd Frank Act, Public Law No. 111-203, 124 Stat. 1376 (2010).

15.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

16.     Further, on January 20, 2013, the CFPB also issued the Truth in Lending Act Final Rules, 78 F.R. 11279 (Regulation Z) (February 15, 2013), which became effective on

January 10, 2014. The plaintiff's Loan is a "federally related mortgage loan" as that term is defined by 12 C.F.R. §1024.2(b).

17.     This case concerns material errors that Seterus made in violating  Regulation X and Regulation Z Regulations, and in failing to properly service Mr. Catalano's loan, by approving him for a temporary trial period plan and accepting payments from Mr. Catalano while at the same time pursuing a foreclosure action against him between April 20, 2016 and July 18, 2016, in violation of Regulation X's prohibition against pursuing a foreclosure sale during a trial period plan, more commonly known as "dual tracking" which is also a violation of New York Law, specifically 3 NYCRR 419(3).

18.     Furthermore, since Seterus by its agent, Fein Such and Crane LLP was pursuing a foreclosure action, fees and costs were added to the Catalano's mortgage loan and thus the month statements sent by Seterus which must be accurate which is a violation of both Regulation X and Regulation Z.

19.     At all times relevant herein, Seterus serviced plaintiff's mortgage loan and was responsible to process Plaintiff's loss mitigation application and evaluation for mortgage relief options and to honor the terms of a Trial Period Plan Modification Offer which was accepted by Mr. Catalano, all as anticipated by 12 U.S.C. §§2601, et seq. and the Regulations promulgated thereunder.

20.     Defendant's actions in this loss mitigation effort did not meet the minimal standards of conduct for mortgage servicers under the newly-enacted "Regulation X" nor did Seterus meet the minimum standard promulgated under "Regulation X" or under "Regulation Z" and Seterus has caused the plaintiff great financial damage, humiliation, suffering, physical

stress and emotional distress, further damage to his credit standing, and forced plaintiff to incur attorneys' fees, all of which will appear more fully below.

21.     Seterus is subject to the aforesaid regulations and does not qualify for the exception for "small servicers" as defined in 12 C.F.R. §1026.41(e)(4) or the exemption for a "qualified lender" as defined in 12 C.F.R. §617.700.

22.     Plaintiff is asserting a claim for relief against Seterus for breach of the specific rules under Regulations X and Z as set forth below.

23.     Plaintiff has a private right of action for the claimed breaches under RESPA pursuant to 12 U.S.C. §2605(f) and such actions provide for remedies including recompense for actual damages, statutory damages, and Plaintiffs' attorneys' fees.

24.     Plaintiff has a private right of action for the claimed breaches under TILA pursuant to 15 U.S.C. §1641(f) and such actions provide for remedies including recompense for actual damages, statutory damages, and Plaintiffs' attorneys' fees.

25.     Seterus is also a debt collector within the meaning of 15 U.S.C. §1692a(6). Seterus services this loan in an attempt to collect a debt asserted to be owed to Fannie Mae.

26.     The Note that is the subject of the foreclosure matter is a debt within the meaning of 15 U.S.C. § 1692(a)(5).

27.     Plaintiff also asserts a private right of action under FDCPA pursuant to 15 U.S.C. §1692k for Seterus' conduct in connection with a motion for summary judgment and is entitled to recover actual damages, costs, statutory damages, and attorney fees.

28.     Plaintiff's RESPA claims, TILA Claims and FDCPA claims against defendant arises due to the failure of Seterus to comply with federal statutes.

## STATEMENT OF RELEVANT FACTS

29.     On or before November 7, 2013, JP Morgan Chase Bank ("Chase") caused a foreclosure action to be filed against the plaintiff being known as "*JP Morgan Chase Bank vs. Catalano, Stephen J., et al.*", Index No. 017638/2013 (the "Foreclosure Matter").  **A copy of the docket for the Foreclosure Matter is attached hereto as Plaintiff's Exhibit A**.

30.     Upon information and belief, while the state court foreclosure action was pending, Chase assigned the loan to Fannie Mae on or about January 15, 2015.

31.     Sometime thereafter, but before the operative facts of this action arose, servicing was transferred from Chase to defendant Seterus, with Seterus assuming full responsibility for servicing in January 2015.

32.     Specifically, Mr. Catalano submitted an application which was submitted to Seterus by his prior counsel in or about January 2016.

33.      Seterus sent correspondence to Mr. Catalano dated April 20, 2016, informing him that he was approved for a Trial Period Plan (the "TPP") under the Home Affordable Modification Program ("HAMP").  **A copy of the TPP is attached hereto as Plaintiff's Exhibit B**.

34.     Thereafter, the plaintiff attempted and successfully secured an affordable loan modification from Seterus, which plaintiff accepted in a timely manner, making on time

payments each month in strict accordance with the Trial Period Plan that was offered to plaintiff by Seterus and promptly and properly accepted in accordance with the terms of the TPP.

35.     The TPP stated that Mr. Catalano was required to pay three (3) monthly trial payments of $2,552.34 which were due June 1, 2016, July 1, 2016 and August 1, 2016.

36.     Despite the fact that the time to accept the TPP offer had not passed, and in complete derogation of both Federal and New York law, Fein Such & Crane LLP, upon information and belief, at Seterus' direction, filed a motion for summary judgment in the still pending state court foreclosure action.

37.     On June 2, 2016, despite the fact that Seterus had received the accepted TPP and upon information and belief had also received Mr. Catalano's first Trial Plan Payment, Seterus, filed a Motion for Summary Judgment and Order of Reference against Mr. Catalano in the Foreclosure Matter (the "Motion"), returnable on June 24, 2016, in violation of 12 C.F.R. §1024.41(g).  **Copy of the Motion for Summary Judgment in the State Court Action attached hereto as Plaintiff's Exhibit C**.

38.     The defendant's motion for summary judgment was served on Mr. Catalano at his home despite his having paid his first trial plan payment prior to being served.

39.     Understandably, plaintiff was shocked, depressed and emotionally distressed as defendants' actions destroyed his optimism that he would be able to stay in his home, the entire purpose of obtaining a loan modification.

40.     The shock to Mr. Catalano and his family that they believed they would lose their home despite being granted a loan modification was so great that Mr. Catalano's wife was forced

to double her dosage of anxiety medication and to see a therapist three times per week, a fact that wore heavily upon Mr. Catalano, both emotionally and financially.

41.     Mr. Catalano immediately called your affiant's office frantically seeking advice and counsel regarding the Motion for Summary Judgment.

42. Your affiant reviewed the paper work and, prior to filing an affirmation in opposition to defendant's motion for summary judgment, called Fein to inform them that a mistake was made.     Your affiant requested that the Motion for Summary Judgment be voluntarily withdrawn prior to preparing opposition papers to the motion because the filed motion was in violation of 12 C.F.R §1024.41(g) of Regulation X.

43.     Nevertheless, Defendants refused to withdraw the Motion despite being put on notice that the motion was made in violation of both Federal and State Law.

44.     Thus, Mr. Catalano was unnecessarily forced to pay Aronow Law, P.C. ("Aronow") to answer the motion and appear in court on his behalf (the "Opposition"), incurring approximately $3,500.00 in legal costs that should never have been necessary to pay

45.     On June 16, 2016, your affiant's office filed an Affirmation in Opposition to plaintiff's motion for summary judgment on Mr. Catalano's behalf.   **Copy of the Opposition attached hereto as Plaintiff's Exhibit D**.

46.     Upon receipt of the opposition papers, defendant's counsel, Fein called your affiant's office seeking to adjourn the motion for summary return date to July 22, 2016 instead of immediately withdrawing the motion.

47. Despite clear evidence that Fein had deceptively sought to collect a debt that it had no legal right to collect, and despite Fein's puzzling request to adjourn the motion date instead of immediately withdrawing the motion, your affiant's office agreed to the adjournment.

48. Dubiously[1], not until July 18, 2016, after three (3) month time frame in which trial plan payments were required to be made, (which were timely and successfully made), during which time defendants had actual and constructive knowledge that plaintiff had accepted the TPP prior to filing their motion for Summary Judgment, Seterus, through counsel finally submitted a request in the Foreclosure Action to withdraw their Motion for Summary Judgment without prejudice.

49. Thankfully, Defendants finally recognized that they were legally required to withdraw the illegal motion, but not before Plaintiff, a person who was in a financially vulnerable position in the first place, was required to pay $3,500 in attorneys' fees to oppose the motion.

50. Thereafter, Seterus extended Mr. Catalano a permanent HAMP Agreement (the "Final Agreement"). **A copy of the Agreement is attached hereto as Plaintiff's Exhibit E**.

51. Mr. Catalano executed the Agreement on August 18, 2016, and Seterus countersigned the Agreement on August 23, 2016. **See Exhibit E**.

52. Defendants' actions demonstrate a quintessential example of the prohibited "Dual Tracking" by simultaneously actively pursuing foreclosure and putatively receiving an accepted TPP, all to the Plaintiff's great prejudice and damage.

---

[1] Dubiously because Defendants adjourned the offending motion to a date when they would be certain all of Plaintiff's mortgage Trial Plan payments were made.

53.     But for Seterus failing to realize that it had received a properly and timely accepted a trial payment plan and had recognized that they were in possession of the successful first payment thereunder, Mr. Catalano would not have been forced to retain an attorney to oppose the motion incurring pecuniary "actual damages".

54.     Nor would Mr. Catalano and his family have had to suffer through sleepless nights for fear that despite accepting the TPP and successfully and timely making a payment, they would have their home ripped away from them, rendering them homeless.

55.     Instead, because of Seterus' willful and reckless behavior and myriad errors, for illegally and deceptively seeking to collect a debt that they had no legal basis to collect, Seterus whose agent Fein directly and proximately caused the following damages to Mr. Catalano which were all set forth in a Notice of Error sent to Seterus on November 7, 2016, which include but are not limited to:

> A. The Cost to retain legal counsel to file an Opposition to Seterus' Motion in the Supreme Court of the State of New York which would never had taken place had Seterus not filed the Motion in violation of §1024.41(g)

> B. He suffered emotional distress which included learning that Seterus was proceeding with the Foreclosure Action despite having offered him a TPP modification.

> C. Myriad fees and corporate advances that were excessive and which Seterus had no basis to charge were included in his mortgage

statements and in the limited transaction history that Seterus did provide eventually in response to Plaintiff's RFI[2].  As a result of the foregoing, Seterus inculcated many additional fees and costs into Mr. Catalano's mortgage loan which were included in the final number which appeared in the permanent loan modification as the final figure to be paid at the end of the loan modification term.

D.  The fees which were included in amount due in his permanent loan modification increased his final payoff number because it included the costs of sixteen property inspection fees in a fifteen month period, even though Plaintiff was actively seeking a loan modification during that time. Additionally, Seterus charged Mr. Catalano a Sherriff's fee despite the fact that no foreclosure had taken place. The fees charged were excessive and Seterus had no basis for charging the aforementioned fees, in violation of Regulation Z since these illegal fees necessarily made each and every mortgage statement inaccurate despite a legal duty to provide accurate payoff statements.

## <u>COUNT ONE</u>
### Violation of 12 C.F.R. 1024.41(g) - Dual Tracking: Motion for Summary Judgment filed after extending a TPP Offer

56.     Plaintiff restates and incorporates all of his statements and allegations contained in the preceding paragraphs in their entirety, as if set forth more fully herein.

---

[2] Plaintiff requested a complete transaction history from the inception of the loan until present.  What Plaintiff received was a very brief transaction history which covered transaction which were made over the last three year period

57.     12 C.F.R. 1024.41(a) expressly states that a borrower may "enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

58.     12 CFR 1024.41(g) provides in relevant part:

(g) If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless…

(1)     The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;

(2)     The borrower rejects all loss mitigation options offered by the servicer; or

(3)     The borrower fails to perform under an agreement on a loss mitigation option.

59.     The Official Commentary to 12 CFR 1024.41(g) provides in relevant part:

41(g) Prohibition on foreclosure sale.
1. Dispositive motion. The prohibition on a servicer moving for judgment or order of sale includes making a dispositive motion for foreclosure judgment, such as a motion for default judgment, judgment on the pleadings, **or summary judgment**, which may directly result in a judgment of foreclosure or order of sale. A servicer that has made any such motion before receiving a complete loss mitigation application has not moved for a foreclosure judgment or order of sale if the servicer takes reasonable steps to avoid a ruling on such motion or issuance of such order prior to completing the procedures required by § 1024.41, notwithstanding whether any such action successfully avoids a ruling on a dispositive motion or issuance of an order of sale. (*emphasis added*).

60.     Seterus was in possession of a complete loss mitigation application on or before April 20, 2016, more than a month prior to willfully and tortiously filing a Motion for Summary Judgment.  **See Plaintiff's Exhibit B**.

61.     At the time Seterus was in possession of plaintiffs' complete loss mitigation application, no sheriff sale was scheduled for the property so the application was considered to have been received by Seterus more than ninety (90) days before any foreclosure sale pursuant to Comment 1 of the CFPB's Official Interpretations to 12 C.F.R. § 1024.41(b)(3).

62.     Seterus, on behalf of Fannie Mae, thereafter caused Fein to file a Motion for Summary Judgment dated May 26, 2016 and filed on June 2, 2016 (One day after Mr. Catalano's 1st trial payment was received).

63.     At no point prior to May 26, 2016, did Seterus send notice stating that the Plaintiff was ineligible for a loss mitigation option pursuant to Seterus' review of the application, nor had Plaintiff rejected or failed to perform upon any loss mitigation option offered to him.

64.     Seterus' actions in causing Fein to file the Motion for Summary Judgment while a TPP offer was pending review violated 12 C.F.R. §1024.41(g).

65.     Seterus' actions are part of a pattern and practice of behavior in violation of Regulation X.

66.     At the time of the filing of this Complaint, Seterus has had more than One Thousand Four Hundred Seventy (1,470) consumer complaints lodged against them nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and

cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/complaintdatabase/).

67.    Defendant's actions caused the Plaintiff to suffer actual damages, non-pecuniary actual damages in the form of embarrassment, stress, abuse and severe emotional distress and pecuniary damages, in the form of unnecessary legal fees to oppose defendant's illegal motion for summary judgment in the amount of $3,500.00 incurred to defend the Summary Judgment Motion. Plaintiff is entitled to recover his actual damages, statutory damages, costs and attorney fees from the Defendant for its willful violation of RESPA's loss mitigation regulations.

## COUNT TWO: AGAINST SETERUS
### Violation of 15 U.S.C. 1692(d), et seq. - Dual Tracking after offering TPP Plan

68.    The Plaintiff restates and reincorporates all allegations contained in Paragraphs 1 through 67 as if fully restated herein.

69.    A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. (15 USC § 1692(d)).

70.    Seterus' conduct violated 15 U.S.C. § 1692d in that Seterus engaged in behavior the natural consequence of which was to harass, oppress, or abuse the Plaintiff in connection with the collection of a debt.  Specifically, Seterus extended a TPP modification offer then violated 1024.41(g) by seeking Summary Judgment.

71.    As a result of Seterus' actions, Seterus is liable for actual damages, statutory damages, costs, and attorneys' fees pursuant to 15 USC § 1692(k).

14

**COUNT THREE: AGAINST SETERUS**
**Violation of 12 C.F.R. §1024.35(b) (5) of REGULATION X**
**(Wrongfully assessing fees and charges that the servicer lacked a reasonable basis to**
**impose upon borrower)**

72. The Plaintiff restates and reincorporates all allegations contained in Paragraphs 1 through 71 as if fully restated herein.

73.     12 C.F.R. §1024.35(b)(5) provides in relevant part that in the event a servicer makes an error by: "Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower."

74.  Seterus charged Mr. Catalano sixteen (16) property inspection fees in a fifteen (15) month period despite having knowledge that Mr. Catalano was seeking a loan modification at the time monthly property inspections were made and charged fees which were unreasonable and excessive which were folded into Mr. Catalano's mortgage loan.

75.     Moreover, Seterus also charged a Sheriff's fee which was a charge Seterus has no basis to charge since the case was still pending in State Court and thus no basis to enlist the services of the Sheriff when no foreclosure sale was eminent.

76.     As a result of Seterus' actions, Seterus is liable to Mr. Catalano for actual damages, statutory damages, costs, and attorney's fees.

77.      Mr. Catalano sustained actual damages in the form of legal fees and expenses paid to investigate claims for RESPA, for the erroneous fees, penalties and costs which were added to his mortgage account with any basis and for other violations by Seterus.

**COUNT FOUR: AGAINST SETERUS**
**Violation of 12 C.F.R. §1024.35(b) (6) of REGULATION X**
**(Failure to Provide an Accurate Payoff Balance at Borrower's Request)**

78. Mr. Catalano repeats, re-iterates and re-alleges each and every statement and

allegation contained in paragraphs "1 through 77" as if fully set forth herein.

79. 12 C.F.R. §1024.35(b)(6) provides in relevant part that in the event a servicer makes an error for:

"Failure to provide an accurate payoff balance amount upon a borrower's request in violation of section 12 C.F.R. 1026.36(c) (3)"

80. Seterus never corrected the mortgage balance from the date of receipt of the notice of error as Seterus' response to Mr. Catalano's notice of error indicates that Seterus found no error with the plaintiff's mortgage account as can be seen by the payoff quote which was sent in response to an RFI sent by Mr. Catalano on April 12, 2016.

81. The RFI was received and signed for by Seterus on April 21, 2016 which was due by the latest on June 9, 2016.

82. Seterus sent its response first on June 27, 2016 and in its response to the RFI it is Clear that a number of charges were included in the Mortgage Loan that were excessive and unreasonable but were charged anyway. **See Plaintiff's Exhibit "F"**.

83. Seterus violated and continues to violate 12 C.F.R. §1024.35(b) (6) for failure to provide an accurate payoff balance to Mr. Catalano because the balance owed continues to include charges which are unreasonable thus rendering the mortgage balance inaccurate.

84. As a result of Seterus' actions, Seterus is liable to Mr. Catalano for actual damages, statutory damages, costs, and attorney's fees.

85. Mr. Catalano sustained actual damages in the form of attorney's fees to oppose a motion for summary judgment that should never have been filed and expenses paid to investigate claims for RESPA and for other violations by Seterus.

16

## COUNT FIVE: AGAINST SETERUS

### Violation of 12 C.F.R. §1026.36(c) (3) of REGULATION Z

### (Failure to provide an accurate payoff statement at the borrower's request)

86. Mr. Catalano repeats, re-iterates and re-alleges each and every statement and allegation contained in paragraphs "1 through 85" as if fully set forth herein.

87. 12 C.F.R. §1026.36(C)(3) provides in relevant part that:

"In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date"

88. Seterus never corrected the mortgage balance from the date of receipt of the notice of error as Seterus' response to Mr. Catalano's NOE indicates that Seterus found no error with the plaintiff's mortgage account.

89. The RFI was received and signed for by Seterus on April 21, 2016 which was due by the latest on June 9, 2016.

90. Seterus sent its response first on June 27, 2016 and in its response to the RFI it is Clear that a number of charges were included in the Mortgage Loan that were excessive and unreasonable but were charged anyway. See Plaintiff's **Exhibit "F"**.

91. Seterus violated and continues to violate 12 C.F.R. §1024.35(b) (6) for failure to provide an accurate payoff balance to Mr. Catalano because the balance owed continues to include charges which are unreasonable thus rendering the mortgage balance inaccurate.

92. Seterus violated and continues to violate 12 C.F.R. §1024.35(b) (6) for failure to provide an accurate payoff balance to Mr. Catalano.

93. As a result of Seterus' actions, Seterus is liable to Mr. Catalano for actual damages, statutory damages, costs, and attorney's fees.

94. Mr. Catalano sustained actual damages in the form of attorney's fees for opposing a motion in a state court action that never should have been filed and expenses paid to investigate claims for RESPA and for other violations by Seterus.

95. Seterus violated and continues to violate 12 C.F.R. §1026.36(c) (3) of Regulation Z for failure to provide an accurate payoff balance to Mr. Catalano.

96. As a result of Seterus' actions, Seterus is liable to Mr. Catalano for actual damages, statutory damages, costs, and attorney's fees.

97. Mr. Catalano sustained actual damages in the form of attorney's fees and expenses paid to investigate claims for RESPA and for other violations by Seterus.

## COUNT SIX: AGAINST SETERUS
### Violation of 15 U.S.C. 1692(e), et seq (Making the false representation that the TPP would stop the foreclosure)

98.     Plaintiff restates and reincorporates all allegations contained in Paragraphs 1 through 97 as if fully restated herein.

99.     A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. (15 USC § 1692(e)).

100.     Seterus acted with deception by extending a TPP offer to the Plaintiff while seeking to simultaneously proceed to summary judgment against him in the Foreclosure Action despite 12 CFR 1024.41 specifically prohibiting Seterus to do so.

101.    As a result of Seterus' actions, Seterus is liable for actual damages, statutory damages, costs, and attorneys' fees pursuant to 15 USC § 1692(k).

## COUNT SEVEN: AGAINST SETERUS
### Violation of New York General Business Law § 349 - Dual Tracking as a Deceptive Business Practice

102.    The Plaintiff restates and reincorporates all allegations contained in Paragraphs 1 through 101 as if fully restated herein. The Plaintiff is a "person" within the meaning of N.Y. Gen. Bus. Law § 349(h) N.Y. Gen. Bus. Law § 349(a) makes unlawful deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in New York State.

103.    Seterus' intentional and willful conduct complained of herein consisted of deceptive acts and practices in the form of misrepresentations and omissions during conduct of business in New York in violation of N.Y. Gen. Bus. Law § 349(a) including the dual tracking actions taken by Seterus, through Fein, by filing the Motion for Summary Judgment when the Plaintiff had entered a TPP agreement and even after defendant through its agent was informed about the dual tracking, the only action taken was to request adjournments for a three month period, failing to admit any error and causing plaintiff and his spouse considerable fear, stress, embarrassment, distress which resulted in plaintiff's spouse to double the dosage and frequency with which she took anxiety medication and forcing her to attend therapy sessions three times per week during which time the motion for summary judgment was needlessly pending causing marital problems, stress, emotional distress and increased costs and financial obligations due to the increase in his spouse's costs for medication and psychological therapy.

Seterus knew, or should have known, that the

act of dual tracking by filing the Motion for Summary Judgment when the Plaintiff had entered a

TPP agreement was false and likely to deceive and mislead not only the Plaintiff but also the

Trial Court.

104.     Seterus' deceptive and misleading act directly, foreseeably, and

proximately caused damages and injuries to the Plaintiff including actual damages, included by

not limited to, attorney fees to defend the Motion for Summary Judgment.

As a result of Seterus' actions, Seterus is liable

for actual damages, statutory damages, costs, and attorneys' fees pursuant to N.Y. Gen. Bus.

Law. §349.

## <u>COUNT EIGHT: AGAINST SETERUS<br>FOR VIOLATION OF 3 NYCRR 419.3</u>

105.     Seterus was in possession of a complete loss mitigation application on or

before April 20, 2016, more than a month prior, willfully and tortiously filing a Motion

for Summary Judgment.  **See Plaintiff's Exhibit B**.

106.     At the time Seterus was in possession of Plaintiffs' complete loss

mitigation application, no sheriff sale was scheduled for the property so the application

was considered to have been received by Seterus more than ninety (90) days before any

foreclosure sale pursuant to Comment 1 of the CFPB's Official Interpretations to 12

C.F.R. § 1024.41(b)(3).

107.     Seterus, on behalf of Fannie Mae, thereafter caused Fein to file a Motion for

Summary Judgment dated May 26, 2016 and filed on June 2, 2016 (One day after Mr. Catalano's

1st trial payment was received.

108.     At no point prior to May 26, 2016, did Seterus send notice stating that the Plaintiffs were ineligible for a loss mitigation options pursuant to Seterus' review of the application, nor had Plaintiff rejected or failed to perform upon any loss mitigation option offered to them. Seterus' actions in causing Fein to file the Motion for Summary Judgment while a TPP offer was pending review violated 12 C.F.R. §1024.41(g).

109.     Pursuant to 3 NYCRR 419.3 Seterus, as a company registered and doing business in

New York is required to obey New York Law.

110.     Pursuant to 3 NYCRR 419.3, Seterus is required at all times to conduct its business in

accordance with the requirements as set forth in various Federal Consumer Protection Statutes, including but not limited to RESPA and the FDCPA in addition to being require to comply with New York State Consumer Protection Statutes, including but not limited to New York GBL §349.

111.     Seterus has violated numerous sections of RESPA, REGULATION X, REGULATION Z, FDCPA and NY GBL §349.

112.     As such, Defendant is in violation of 3 NYCRR 419.3, and as such is entitled to a declaratory judgment.

## CONCLUSION

113.   Defendant Seterus' "dual tracking" and delays in this case are consistent with their continuing poor mortgage servicing practices and utter failure to comply with the RESPA regulations contained in 12 CFR §1024.41 et seq. Defendant's conduct is part of a pattern and

practice and, pursuant to 12 USC §2605 (f)(1)(B) AND 15 U.S.C. §1601 Plaintiff is entitled to statutory penalties for each and every violation of the regulations contained in 12 C.F.R. §1024.35, 12 C.F.R. §1024.41, 12 C.F.R. §1026  and N.Y. Gen. Bus. § 349.

114.    As a direct and proximate result of Defendant's conduct and the distinct and ongoing violations above enumerated, Plaintiff suffered actual damage in the form of embarrassment with their neighbors, wasted time, frustration, and humiliation along with the emotional distress that follows from having their home put up for sheriff sale. Plaintiff was forced to incur attorney fees and costs to investigate and defend the foreclosure action pending against them, and attorney fees to investigate and prepare this suit and have suffered further damage to their already weakened credit profile.

## JURY DEMAND

115.                Plaintiffs hereby request a trial by jury on all issues, with the maximum number of jurors permitted by law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter its order granting judgment against Seterus for the following:

A.    For Plaintiff's actual damages, costs, and reasonable attorney fees as to each and every Count;

B.    For statutory damages of up to Two Thousand Dollars ($2,000.00) as to Count One through Four;

C.    For statutory damages of up to Four Thousand Dollars ($4,000.00) as to Count Five;

D.   For statutory damages of up to One Thousand Dollars ($1,000.00) as to each of

Count Six;

E.   For statutory, actual and punitive damages as to Count Seven;

F.   Such other relief which this Court may deem appropriate.

Dated:  Woodbury, New York
        June 9, 2017
                                        Respectfully submitted,


                                        /s/ Darren Aronow
                                        Darren Aronow
                                        ARONOW LAW PC
                                        20 Crossways Park Drive, North Suite 210
                                        Woodbury, New York 11797
                                        Tel. (516) 762-6700
                                        Fax. (516) 303-0066

                                        DANN & MERINO, P.C.
                                        MARC A. DANN
                                        1 Meadowlands Plaza, Suite 200, Room 252
                                        East Rutherford, NJ 07073
                                        (216) 373-0539
                                        Fax (216) 373-0536
                                        notices@dannlaw.com

## <u>VERIFICATION OF COMPLAINT AND CERTIFICATION</u>

STATE OF NEW YORK         )

                                       ) ss

COUNTY OF NASSAU           )

Pursuant to 28 U.S.C. § 1746, Plaintiff, Stephen J. Catalano, having first been duly sworn and upon oath, verifies, certifies, and declares as follows:

1. I am the Plaintiffs in this civil proceeding.
2. I have read the above-entitled Civil Complaint prepared by my attorney and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this Civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this Civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this Civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorney which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorney where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 2, 2017

 /s/ Stephen J. Catalano _____

STEPHEN J. CATALANO


Sworn and subscribed before me this
the 2nd   day of May, 2017.
/s/ Darren Aronow LIC #01ar6022417
Notary Public